UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTH ATLANTIC OPERATING
COMPANY, INC., and NATIONAL
TOBACCO COMPANY, L.P.,

                Plaintiffs,

v.

JINGJING JUANG, et al,

                Defendants,

Case No. 15-14013
Hon. Terrence G. Berg

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS FOR DEFAULT JUDGMENT (DKTS. 244 & 260)**

## I. INTRODUCTION

This case concerns counterfeit ZIG-ZAG® rolling papers, a product popular among smoking enthusiasts. Plaintiffs North Atlantic Operating Company, Inc. and National Tobacco Company, L.P. (together, "North Atlantic") sued Defendants for selling counterfeit rolling papers. Many Defendants ignored the lawsuit. North Atlantic now moves for default judgments against two groups of Defendants.[1] Dkts. 244 & 260. For the reasons outlined below, North Atlantic's motions are **GRANTED IN PART AND DENIED IN PART**.

---

[1] The first group—from North Atlantic's earlier motion—consists of Francis Ferland and eBay Seller bestdealmontreal (the "Ferland Defendants"); Kale Huang, Kal Huang, and eBay Sellers Kyystore and Kaltek-Shop (the "Kyystore Defendants"); Mimi Nguyen and eBay Sellers mimifbabyy, honestfisherman2015, andhonestvalues1 (the "Nguyen Defendants"); Narek Nazaryan and eBay Seller hookupdealsforyou (the "Nazaryan Defendants"); Harvey Dan, Speedzone, and eBay Seller harda-enlhui (the "Dan Defendants"); Jaime Ortiz and

## II. BACKGROUND

North Atlantic sells smoking products, including smoking papers, smoking wraps, and vaporizers. See zigzag.com/products. At issue in this case are the ZIG-ZAG® 1 ¼ Size French Orange products:



Dkt. 244, Pg. ID 1994.[2] All authentic ZIG-ZAG® Orange products display eight trademarks, four that North Atlantic licenses from the registrant, Bolloré S.A:

(1) U.S. TM Reg. No. 610,530 for ZIG-ZAG (Stylized);
(2) U.S. TM Reg. No. 1,127,946 for ZIG-ZAG (Word Mark);

---

eBay Seller auctionlegends (the "Ortiz Defendants"); Andrew Russell and eBay Seller dollarplusdiscount1 (the "Russell Defendants"); and DHGate Seller jackyhu; DHGate Seller cngzss; DHGate Seller cngzss1; and DHGate Seller kathy0557 (the "DHGate Seller Defendants"). Dkt. 244, n. 1.

The second group—from North Atlantic's later motion—consists of the following groups of Defendants: JingJing Huang, Alice Huang, and eBay Seller HUAPUR_6233 (the "Huang Defendants"); Anle Pan, Super Home Variety Store, Inc., and eBay Seller ANLPA91 (the "Super Home Defendants"); and Zhangqi Pan, Ryan Pan, and eBay Seller RYAN0201168 (the "Pan Defendants"). Dkt. 260, n. 1.

[2] North Atlantic's brief in support if its second motion (Dkt. 260) is essentially identical to its brief in support of its first motion (Dkt. 244), so throughout the remainder of this order the Court will cite only North Atlantic's brief in support of its first motion.

(3) U.S. TM Reg No. 2,169,540 for the Smoking Man Design; and

(4) U.S. TM Reg No. 2,169,549 for the Smoking Man Design)[3]

and four that North Atlantic owns:

(5) U.S. TM Reg. No. 2,664,694 for North Atlantic Operating Company, Inc.;

(6) U.S. TM Reg. No. 2,664,695 for Gear Design;

(7) U.S. TM Reg. No. 2,610,473 for NORTH ATLANTIC OPERATING COMPANY (Word Mark); and

(8) U.S. TM Reg. No. 2,635,446 for NORTH ATLANTIC OPERATING COMPANY (Word Mark)).

Dkt. 244, Pg. ID 1995.

Authentic ZIG-ZAG® Orange products also display North Atlantic's copyrighted graphic titled "North Atlantic Operating Company, Inc." (the "NAOC copyright") Dkt. 244, Pg. ID 1996. And the products include gold-fill lettering, French phrases such as "Qualite Superieure" and "Braunstein Freres France," and statements such as "Made in France," "Imported French," and "Distributed by NORTH ATLANTIC OPERATING COMPANY, INC." Dkt. 244, Pg. ID 1996.

The counterfeit products Defendants allegedly sell also contain the trademarks, copyrighted graphic, and other design elements such as gold-fill lettering,

---

[3] The ZIG-ZAG® brand uses a number of variations of the Smoking Man. The two trademarked designs at issue in this case are:



French phrases, and statements about product origination and distribution. Dkt. 244, Pg. ID 1997. North Atlantic discovered this information after years of investigation that included controlled buys, inspection, and analysis of certain suspected counterfeit ZIG-ZAG® Orange products listed for sale at below-market prices. Dkt. 244, Pg. IDs 1997-1998. After confirming that the below-market priced products were counterfeits, North Atlantic brought this lawsuit.

North Atlantic's initial complaint listed 28 groups of Defendants. Dkt. 244, Pg. ID 1998. Twenty of the original groups settled. Dkt. 244, Pg. ID 1998. After further investigation, North Atlantic learned that 15 out of those 20 had purchased the counterfeit products from the DHGate Seller Defendants. Dkt. 244, Pg. ID 1998. So North Atlantic amended its complaint to add the DHGate Seller group to this case. Dkt. 244, Pg. ID 1998.

The First Amended Complaint contains six causes of action:

- Federal Trademark Infringement in Violation of 15 U.S.C. § 1114;
- False Designation of Origin and Trademark/Trade Dress Infringement In Violation of 15 U.S.C. § 1125(a)
- Federal Copyright Infringement in Violation of 17 U.S.C. §§ 101
- Improper Use under MCL § 429.42
- Unfair Competition under MCL § 445.903; and
- Common Law Unfair Competition

Dkt. 188, Pg. IDs 1565-1580

Upon filing this lawsuit, North Atlantic sought an ex parte temporary restraining order, which the Court issued. Dkt. 244, Pg. ID 2001. The Court also allowed North Atlantic to serve Defendants via e-mail, which North Atlantic did. Dkt. 244,

4

Pg. ID 2001-2002. None of the Defendants responded to the lawsuit by appearing and filing either an answer or a responsive motion. Dkt. 244, Pg. ID 2002. When North Atlantic filed its First Amended Complaint ("FAC"), it re-served the Defendants who had not settled and for the first time served the DHGate Defendants. Dkt. 244, Pg. ID 2002. North Atlantic served the FAC by email, by mailing copies via overnight courier, by serving third-party marketplaces (eBay) and payment processors (PayPal), and, where possible, by serving Defendants' registered agents. Dkt. 244, Pg. ID 2002.

Although none of the remaining Defendants appeared in and defended against this lawsuit, North Atlantic's attempts to serve them appear to have put Defendants on notice of the lawsuit and North Atlantic's allegations of trademark and copyright infringement. After service of the First Amended Complaint, the DHGate Defendants altered photographs on online listings of the counterfeit products by blurring out or deleting the trademarked material on the packaging. Dkt. 244, Pg. ID 2003. And other Defendants had a "Mr. Zou" reach out to North Atlantic and attempt to negotiate a settlement without appearing in the case. Dkt. 260, Pg. ID 2103.

In August of 2016, North Atlantic sought entries of default from the Clerk of Court, which were entered the next month. Dkt. 244, Pg. IDs 2003-2004. North Atlantic notified the remaining Defendants of its intention to seek default judgment, served copies of the requests for default judgment, and served copies of the Clerk's Entries of Default after those entries issued. Dkt. 244, Pg. ID 2004. North Atlantic now moves for default judgment. Dkts. 244 & 260. No Defendants

have responded to either motion. The Court held a hearing on the motions on February 1, 2017. No Defendants appeared at that hearing.

## III. ANALYSIS

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the Court Clerk enters default, all well-pleaded allegations are deemed admitted, except those concerning damages. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). To render a valid judgment, however, a court must have jurisdiction to hear the case. *Id.* North Atlantic's federal trademark and copyright claims give the Court subject matter jurisdiction. See 28 U.S.C. § 1331. And North Atlantic's allegations—accepted as true—that Defendants have continuous, systematic, and substantial contacts with the State of Michigan, including doing business here, directing sales and advertising efforts here, and sending the counterfeit products here, Dkt. 188, Pg. ID 1529, are sufficient to establish the Court's personal jurisdiction over Defendants. See *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

North Atlantic has established this Court's jurisdiction over Defendants, so the Court must now determine whether North Atlantic is entitled to entry of a default judgment on its claims, and, if so, the damages amount North Atlantic should recover.

### a. North Atlantic has established Defendants' liability for Trademark and Trade Dress Infringement.

North Atlantic asserts two claims for trademark infringement under the Lanham Act. First, it pleads infringement of the registered ZIG-ZAG® and NAOC® Trademarks under Section 32 (infringement of a registered mark). Dkt. 188, Pg. IDs 1565-1566. Second, it pleads infringement of the ZIGZAG® Orange Trade Dress, an exclusively protectable common-law mark, under Section 43(a) (infringement of an unregistered mark). Dkt. 188, Pg. IDs 1566-1567. North Atlantic is entitled to a default judgment on both Counts.

To establish liability for trademark infringement, North Atlantic must show that (1) it owns a valid, protectable trademark; (2) Defendants used that mark in commerce without the North Atlantic's consent; and (3) there was a likelihood of confusion. 15 U.S.C. § 1114(1); *Ford Motor Co. v. Lloyd Design Corp.*, 22 Fed. App'x 464, 468 (6th Cir. 2002). According to North Atlantic's allegations, it has exclusive rights to use the ZIG-ZAG® Trademarks and owns the NAOC® Trademarks, all of which are registered. North Atlantic also pleads that each Defendant sold, either directly or indirectly to North Atlantic, counterfeit ZIG-ZAG® Orange products that contained counterfeit versions of the ZIG-ZAG® and NAOC® Trademarks. And where a defendant uses a counterfeit mark, a "likelihood of confusion is presumed." *Ford Motor Co.*, 22 Fed. App'x at 486 (holding that it is unnecessary to analyze the likelihood of confusion factors in counterfeiting cases). Thus North Atlantic has established entitlement to a default judgment on this claim.

To establish liability for trade dress infringement, North Atlantic must show that (1) the trade dress is distinctive in the marketplace, "thereby indicating the source of the good it dresses," (2) the trade dress is primarily nonfunctional, and (3) the trade dress of the competing good is confusingly similar. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). North Atlantic alleges that it owns protectable common-law trade dress rights in the appearance of the ZIG-ZAG® Orange packaging, which is distinctive given its gold-fill elements, French phrases, and other labels. North Atlantic also alleges that its packaging is nonfunctional, which even if not deemed admitted by Defendants' default would be a matter of common sense; labels and gold elements of a package have no function in a product that is a rolling paper. And North Atlantic alleges that Defendants' counterfeit trade dresses are not just "confusingly similar," but are designed to be exactly the same as North Atlantic's trade dress; they are counterfeits—fake reproductions. Thus North Atlantic has established entitlement to a default judgment on this claim.

### b. North Atlantic has established Defendants' liability for Copyright Infringement.

To establish liability for copyright infringement, North Atlantic must show that (1) it owns a valid copyright and (2) the defendant copied the copyrighted work. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). Ownership of a federal copyright registration creates the presumption that plaintiff owns a valid copyright. *Id.* North Atlantic alleges that it owns the NAOC

copyright, that the NAOC Copyright appears on all authentic ZIG-ZAG® Orange products sold in the United States, that the NAOC Copyright also appears on the counterfeit products, and that Defendants sold those products after North Atlantic obtained its copyright. Dkt. 244, Pg. ID 2008. Thus North Atlantic has established entitlement to a default judgment on this claim.

### c. North Atlantic has established Defendants' liability for trademark infringement and unfair competition under Michigan law, but not for unfair competition under common law

To establish entitlement to a default judgment for its claim of trademark infringement under Mich. Comp. Laws § 429.42 (Count IV) and its claim of unfair competition under Mich. Comp. Laws § 445.903 (Count V), North Atlantic must make the same showing it needed to make for its federal trademark infringement claims; the same standards govern both the Lanham Act and Michigan state law unfair competition claims. See *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983). North Atlantic is entitled to a default judgment on its federal trademark claims, meaning it is also entitled to a default judgment on its unfair competition claims arising under Michigan law.

For North Atlantic's common law unfair competition claim, it argues that the elements it must show are: (1) its mark is valid, (2) it has priority in the mark, (3) it is likely that consumers will confuse Defendants' mark with North Atlantic's mark, and (4) Defendants used the allegedly infringing mark. Dkt. 244, Pg. ID 2009. But North Atlantic provides no support for its position; no citation appears in the relevant

9

section of its brief. Thus, although North Atlantic might be entitled to a default judgment on its claim, it has failed to make that showing.

In sum, North Atlantic's motions for default judgments are **GRANTED** with respect to its first five claims, and are **DENIED WITHOUT PREJUDICE** on its sixth claim. If North Atlantic wishes to submit case law that supports its position on its common law claim, it must do so within fourteen days of this order.

### d. North Atlantic has established that it deserves the damages award it seeks

In lieu of actual damages, North Atlantic seeks statutory damages of $200,000 per group of Defendants, for a total of $2,800,000. Dkt. 244, Pg. ID 2011; Dkt. 260, Pg. ID 2112. Although a plaintiff who owns both trademarks and copyrights may recover under both Acts, see *Microsoft Corp v. Compusource Dist. Inc.*, 115 F. Supp. 2d 800, 811 (E.D. Mich. 2000), North Atlantic seek statutory damages under only the Lanham Act.

The Lanham Act authorizes statutory damages, and caps them at $200,000 per counterfeit mark per type of good sold or $2,000,000 per counterfeit mark per type of good sold if a court finds that the infringement was willful. 15 U.S.C. § 1117(c). In its original briefing, North Atlantic argued that Defendants willfully infringed eight trademarks, meaning the maximum damages award under the Lanham Act would be $16,000,000 per group of Defendants. Dkt. 244, Pg. ID 2011. North Atlantic then argued that it was not asking for $16,000,000 per group of Defendants, but a "reasonable amount of $200,000." *Id.* In other words, to convince the Court that a

$200,000 award was reasonable, North Atlantic pointed out that at least it was not seeking a much higher amount. But the fact that there is a much higher theoretically-allowable quantum of awardable damages does not affect whether North Atlantic's request is reasonable. So at the hearing the Court asked North Atlantic to file a supplemental brief that addressed whether any legal authority justified an award of $200,000 per group of Defendants, and North Atlantic filed that brief a few weeks later. Dkt. 272.

North Atlantic's supplemental brief does a much better job justifying its damages-award request; it points to a nearly identical case against a Louisiana entity that sold counterfeit ZIG-ZAG® Orange products where North Atlantic obtained a damages award slightly higher than what it requests here. *North Atlantic Operating Company, Inc. v. Evergreen Distributors, LLC*, No. 13-cv- 4974-ERK-VMS (E.D.N.Y. Jan. 5, 2015), report and recommendation adopted, Order entered Jan. 28, 2015; Dkt. 272-3. In *Evergreen*, North Atlantic asked for the full $16,000,000, but saw its request denied because obtaining a judgment for so much money would have been a windfall. Dkt. 272-3, p. 28. Instead, the court awarded North Atlantic $240,000—an amount "within the range awarded by courts in comparable circumstances." Dkt. 272-3, p. 30. This Court agrees with the *Evergreen* Court's finding, and therefore grants North Atlantic's request for a judgment amount of $200,000 per group of Defendants.

Other courts have considered a variety of factors when determining damages awards in similar cases, see Dkt. 272, Pg. IDs 2211-2212, but what drives this Court's finding is the need for deterrence.

Here, Defendants allegedly sold (and perhaps even manufactured) counterfeit ZIG-ZAG® Orange rolling papers: North Atlantic's flagship product. The infringing products are not just *similar* products, they aim to be exact copies. So Defendants have not sought to reap profits by reminding consumers of ZIG-ZAG® Orange products and thus benefitting tangentially from North Atlantic's reputation in the marketplace, they have instead attempted to trick consumers into thinking that Defendants' products are actually North Atlantic's products. This is the most egregious form of infringement—indeed the most lucrative—and calls for a damages award that will serve as a forceful deterrent.

Likewise, Defendants' choice not to respond to this lawsuit merits a deterrent. It is possible that North Atlantic's actual damages are less than $200,000 per group of Defendants, but by not appearing, Defendants left North Atlantic to grasp in the shadows for sales statistics that Defendants could have produced (and would have been required to produce had they responded to the lawsuit). This conduct also needs to be deterred; it is unfair to a plaintiff that it must watch its trademarks suffer infringement, pursue legal remedies, prove its case, and then be frustrated in it attempts to obtain information as to its damages by the same defendants' dilatory and non-responsive tactics.

A damages award of $200,000 per group of Defendants is a fair amount that is neither too harsh nor too lenient; it neither sinks Defendants for eternity nor lets them sail off into the sunset without paying a price for their counterfeiting. It also deters future counterfeiters from defaulting in lawsuits when their sales volumes are

low because in those cases it would be less expensive and less burdensome to answer the complaint, turn over the relevant sales statistics, and allow the plaintiff to prove actual damages. The Court therefore finds that North Atlantic's request is reasonable.

### e. North Atlantic has established that it is entitled to recover its attorneys' fees, costs, and investigative fees

North Atlantic asks the Court to award attorneys' fees, costs, and investigative fees under either the Lanham Act or the Copyright Act. Dkt. 244, Pg. ID 2012. Under the Copyright Act, the Court in its discretion may award fees to the "prevailing party." 17 U.S.C. § 505. And some courts have held that an attorneys' fee recovery in a trademark infringement case includes recovery of investigative fees. See, e.g., *Fila U.S.A. v. Run Run Trading Corp.*, No 95 Civ. 7144, 1996 WL 271992, at *11 (S.D.N.Y. May 21, 1996). North Atlantic has secured default judgements against Defendants, meaning it is the prevailing party. And North Atlantic's attorneys have litigated this case with care and without waste. Thus, the Court finds it appropriate to award North Atlantic its attorneys' fees, costs, and investigative fees. Therefore, **IT IS HEREBY ORDERED** that, within fourteen days of this order, North Atlantic must submit an accounting of its fees and costs related to this case.

### f. North Atlantic has established that it is entitled to a permanent injunction

North Atlantic requests a permanent injunction to prevent Defendants from reverting to selling counterfeit ZIG-ZAG® Orange products. The Court has already held that injunctive relief is appropriate, and nothing has changed to alter the Court's

conclusion. Injunctive relief is appropriate to prevent ongoing irreparable harm to North Atlantic, and is in the public interest because the public interest disfavors trademark infringement and counterfeit products. **IT IS HEREBY ORDERED** that, within fourteen days of this order, North Atlantic must submit a proposed permanent injunction.

## IV. CONCLUSION

For the foregoing reasons, North Atlantic's motions for default judgment are **GRANTED** with respect to claims I-V and **DENIED WITHOUT PREJUDICE** with respect to claim VI. Within fourteen days of this order, North Atlantic must submit (1) an accounting of its fees and costs and (2) a proposed permanent injunction.

**SO ORDERED.**

Dated: May 9, 2017
s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on May 9, 2017, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager